**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZUFFA, LLC, d/b/a Ultimate Fighting Championship,<br><br>    Plaintiff,<br><br>v.<br><br>MARIO LAVECCHIA Individually, and as officer, shareholder, principal, manager and/or member of TEAM LAVECCHIA LLC, d/b/a PAR 440 RESTAURANT & LOUNGE,<br><br>and<br><br>TEAM LAVECCHIA LLC, d/b/a PAR 440 RESTAURANT & LOUNCE,<br><br>    Defendants. | Civil Action No. 20-00240 (SDW) (LDW)<br><br>**OPINION**<br><br>April 20, 2021 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff ZUFFA, LLC's ("Plaintiff") Motion for Summary Judgment on Counts I and III of the Complaint (D.E. 1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Plaintiff's Motion is **DENIED** in part and **GRANTED** in part.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

1

Plaintiff owns the copyright to UFC 237 (the "Broadcast"), a mixed-martial-arts fight originally exhibited on May 11, 2019. (Compl. ¶¶ 6, 18; D.E. 24 ("Br."), Exs. B, G.) Although individuals can stream the Broadcast residentially by paying a fee to authorized platforms, commercial establishments that wish to exhibit the Broadcast must purchase a license from Plaintiff. (Br. at 2-3.) Plaintiff alleges that, on May 11, 2019, Defendants unlawfully exhibited the Broadcast without a license at Par 440 Restaurant & Lounge (the "Restaurant"). (Compl. ¶¶ 6, 18-19, 23.)

When the Restaurant advertised a May 11, 2019 exhibition of the Broadcast on its website, Plaintiff sent an auditor to the Restaurant to investigate. (Br. at 3-4; Br., Exs. B, G at 2 ("Closkey Aff.").) The auditor confirmed that the Broadcast was playing in the Restaurant but noted there were no cover charges for entrance or other Broadcast advertisements in the vicinity. (Closkey Aff.) The auditor did not see a satellite, cable receiver, or laptop "streaming MMA programming." (*Id.*) Nonetheless, based on certain marks on the Broadcast itself, she concluded it was being streamed "from the Internet or ESPN+ online." (*Id.*) Although the auditor estimated the total Restaurant capacity at between 100-200 people, she did not count the actual number of guests watching the Broadcast and was unable to locate the official posted occupancy. (*Id.*)

Plaintiff filed a Complaint on January 7, 2020, alleging that Defendants illegally intercepted the Broadcast and asserting claims under 47 U.S.C. § 605 ("Section 605") (Count I), 47 U.S.C. § 553 ("Section 553") (Count II), and 17 U.S.C. § 501 ("Section 501") (Count III). (*See* Compl.) Defendants answered on March 3, 2020. (D.E. 8.) On February 4, 2021, Plaintiff moved for summary judgment on Counts I and III (the "Motion"), promising to "withdraw" Count II (Section 553) if summary judgment on Count I (Section 605) were to be granted. (Br. at 2.) Defendants opposed on March 1, 2021. (D.E. 26.) Defendants admit that they did not purchase a

2

commercial license for the Broadcast. (Br., Ex. D at 5.) However, Defendants assert that they "signed up for ESPN and ESPN+," which provided them "access to [the Broadcast]" and allowed them to stream the fight "[o]nline through broadband internet." (*Id.* at 4.) Defendants further aver that they "had no reason to believe" that they were required to reach out to Plaintiff to rent the Broadcast, as they "[were] sold the distribution through Disney and ESPN." (*Id.* at 5.) Plaintiff did not file a reply.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations,

unsupported assertions, or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quotation omitted).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III. DISCUSSION

#### a. SECTION 605

"Section 605 prohibits the unauthorized publication or use of interstate or foreign communications by wire or radio." *Garden City Boxing Club, Inc. v. Stone*, 285 F. Supp. 2d 447, 450 (D. Del. 2003). "[S]ections 553 and 605 provide for alternative forms of relief depending on

how the defendant intercepted the program at issue—*i.e.*, the interception of actual airborne satellite transmissions (section 605) or the interception of transmissions once they reach the cable system (section 553)."[1] *J&J Sports Prods., Inc. v. Munguti*, Civ. No. 06-1282, 2007 WL 928479, at *1 (D.N.J. Mar. 27, 2007). Therefore, to prevail on a Section 605 claim, Plaintiff must demonstrate that: "the defendants (1) intercepted a broadcast" of airborne satellite transmissions; "(2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others." *J&J Sports Prods., Inc. v. Edrington*, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 206 (3d Cir. 2001) (a satellite transmission that "reaches a cable system's wire distribution phase [] is subject to 553 and is no longer within the purview of 605.").

Here, Plaintiff has failed to clearly allege a statutorily sufficient manner of interception. Defendants have repeatedly averred in the record that they used an online ESPN+ subscription to stream the Broadcast, either through AT&T or Comcast internet services. (*See* Br., Ex. D; Br. at 10 (acknowledging that Plaintiff "streamed the event online").) This would seem to negate an essential element of Plaintiff's Section 605 claim. *See TKR Cable Co.*, 267 F.3d at 206. Nonetheless, the Motion fails to provide "any evidence," case law, or argument as to how the undisputed manner in which the Broadcast was intercepted—internet streaming—falls within Section 605's (rather than Section 553's) framework and amounts to "a satellite transmission [that]

---

[1] Plaintiff repeatedly cites to default judgment cases where Section 605 and 553 claims were brought in the alternative and the defendant failed to respond to the complaint. (*See* Br.) Although it may be appropriate, in the context of a default judgment, for the court not to "fault[] Plaintiff . . . for failing to plead the particular manner of interception since this may be exclusively within the Defendants' knowledge," *J&J Sports Prods. v. Podermo*, Civ. No. 06–1374, 2007 WL 923522 at *2 (D.N.J. Mar. 26, 2007), the same is not true where Defendants have responded to the Complaint and engaged in discovery. Here, Plaintiff had the requisite interception information prior to filing its Motion yet chose not to withdraw one of its competing claims prior to moving for summary judgment. (*See* Br., Exs. C, D.)

was intercepted."² *See Joe Hand Promotions, Inc. v. Forupk LLC*, Civ. No. 19-07970, 2020 WL 1864582, at *2 (D.N.J. Apr. 14, 2020); *Joe Hand Promotions, Inc. v. Howell*, Civ. No. 18-02318, 2019 WL 1791416, at *2 (E.D. Pa. Apr. 24, 2019) (denying recovery under Section 605 where there were "indicat[ions] [that] violations occurred through cable rather than a satellite"). Instead, the Motion repeatedly reiterates the ways that the Broadcast "could" have been intercepted and misleadingly cites Second Circuit precedent without citing the Third Circuit's binding decision in *TKR Cable C*o.³ (D.E. 24-8 ("McKnight Aff."), ¶¶ 4-5; Br. at 9-10 ("[r]egardless of their method of interception, whether by streaming, cable, or satellite …").) Additionally, Defendants assert that they were authorized to access their ESPN+ subscription, and Plaintiff has not provided terms of use dated in the appropriate year limiting Plaintiff's subscription to residential access. (*See* D.E. 26 at 3, n.2.) Thus, it is not clear that "the evidence establishes the moving party's entitlement to

---

² Moreover, some federal courts have explicitly determined that "communications by satellite that are received and then retransmitted over the internet are not covered by [Section] 605," in part "because internet transmissions 'are not 'incidental' to the transmission of radio communications.'" *See J&J Sports Prods., Inc. v. Patel*, 364 F. Supp. 3d 1368, 1376 (S.D. Ga. 2018) (citing *TKR Cable Co.*, 267 F.3d at 202). "To hold otherwise would grossly mischaracterize the massive scale and wired infrastructure of the internet." *Id.*

³ In particular, Plaintiff states that "[t]here is significant case law that uses *Int'l Cablevision, Inc. v. Sykes* as the standard for determining what is considered an interception." (Br. at 9.) As courts in this district have previously articulated to Plaintiff's counsel, "[i]n light of the binding 2001 [*TKR Cable Co.*] decision by the Third Circuit . . . and Plaintiff's failure to present facts describing the manner in which the [Broadcast] was allegedly pirated, this Court cannot conclude that Defendants' actions were a violation of either section 553 or section 605." *Garden City Boxing Club, Inc. v. Fernandez*, Civ. No. 05-3873, 2006 WL 8457730, at *3 (D.N.J. May 31, 2006) (declining to "impose the higher statutory damages associated with section 605 merely because Plaintiff has chosen to seek [summary] judgment on liability under that section").

Further, the Third Circuit specifically chose not to endorse the *Sykes* decision, which "broadly" interpreted Section 605, and instead followed the Seventh Circuit's more narrow interpretation that "cable television programming transmitted over a cable network is not a 'radio communication' as defined in § 153(b), and thus its unlawful interception must be prosecuted under [Section] 553(a) and not [Section] 605." *TKR Cable Co.*, 267 F.3d at 206. The Lonstein firm has repeatedly been admonished for similar behavior. *See, e.g.*, *J&J Sports Prods., Inc. v. Perdomo*, Civ. No. 06-1374, 2007 WL 923522, at *2–3 (D.N.J. Mar. 26, 2007) (collecting cases chastising "Plaintiff and its attorney, Wayne Lonstein, Esq." for ignoring the Third Circuit's "controlling precedent" and "persist[ing] on filing complaints" seeking relief under both Section 605 and Section 553).

judgment as a matter of law," *Celotex Corp.*, 477 U.S. at 322-23, and summary judgment is inappropriate.

### b. SECTION 501

#### i. Liability

"Federal copyright law creates a cause of action against '[a]nyone who violates any of the exclusive rights of the copyright owner.'" *Star Pac. Corp. v. Star Atl. Corp.*, 574 Fed. Appx. 225, 229 (3d Cir. 2014) (citing 17 U.S.C. § 501(a)). To prove a Section 501 copyright violation, Plaintiff must demonstrate that it owned a copyright, which entitled it to exclusive rights, and that Defendants violated those rights. *See* 17 U.S.C. § 106(5); 17 U.S.C. § 501(a)-(b); *see Innovative Sports Mgmt., Inc. v. Perez*, Civ. No. 19-12849, 2019 WL 6167954, at *3 (D.N.J. Nov. 20, 2019).

Here, the record demonstrates that Plaintiff is the copyright owner of the Broadcast (Br., Ex. F), and that Defendants exhibited that copyright in a commercial setting (Br., Exs. A, D). Defendants have not disputed Plaintiff's copyright ownership. (*See* D.E. 26.) Because Defendants never obtained the proper commercial license, exhibiting the Broadcast in the Restaurant infringed upon Plaintiff's exclusive commercial distribution rights under its copyright. (Br. at 2-3.) Therefore, there is no dispute as to any material fact and, as a result, Plaintiff's motion for summary judgment as to Section 501 liability is granted.

#### ii. Damages

Plaintiff also seeks enhanced statutory damages, arguing that Defendants acted willfully when exhibiting the Broadcast in violation of the copyright. (Br. at 16); 17 U.S.C. § 504(c). "A willful violation occurs when a defendant knows or should have known that his or her actions constitute copyright infringement." *Joe Hand Promotions, Inc. v. Verzella*, Civ. No. 18-2321, 2019 WL 5626260, at *2 (E.D. Pa. Oct. 31, 2019) (citation omitted); *but see Perdomo*, 2007 WL

923522, at *3-4 ("Plaintiff's attorney, Mr. Lonstein, has a history of filing complaints in this district seeking such enhanced statutory damages with no factual basis.").

Here, a genuine dispute remains as to Defendant's knowledge of the residential nature of the ESPN+ subscription. (*Compare* Br. *with* D.E. 26.) Although Plaintiff has proffered Terms of Use from Disney, they are dated over a year after the incident occurred. (Br., Ex. E (terms of use dated June 9, 2020); D.E. 26 at 3-4.) Moreover, as Defendants have provided proof of a recurring ESPN+ subscription, paid for from a business checking account, the website advertisement alone does not eliminate the dispute regarding willful intent. (D.E. 26-1, Ex. A.) The record also demonstrates that the Restaurant did not collect a cover charge, create additional advertisements, or use an illegal "descrambling" satellite interception device. (Br., Exs. D, G.) Nor has Plaintiff provided the actual number of individuals present on the night of the exhibition, evidence of increased capacity due to the event, or proof of premiums placed on food or beverages that evening. (*See* Br.); *compare* McKnight Aff., ¶¶ 16, 21 (making allegations regarding "illegal and nefarious [piracy] methods") *with Innovative Sports Mgmt.*, *Inc. v. Cortez*, Civ. No. 19-12048, 2020 WL 882131, at *5 (D.N.J. Feb. 24, 2020) (denying enhanced damages and noting that Plaintiff's counsel's "discussion of 'nefarious' acts and 'pirating' obscures [a] fairly humdrum reality"). Thus, given these disputed facts, granting summary judgment as to damages would be inappropriate.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **DENIED** in part and **GRANTED** in part. An appropriate order follows.

                                                    ___/s/ Susan D. Wigenton_____
                                                    **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Leda D. Wettre, U.S.M.J.
        Parties